Opinion of the Court,
Judge Mints.
THE complainant below filed his bill, claiming a perpetual injunction against a judgment in ejectment, and the conveyance of the legal title of a lot in Frankfort. Both parties claim under Jeremiah Gullion.
The equity set up by th'c complainant, is by deed, from the directors appointed to build the capítol,, when the scat of government was first located in the town. These directors, pursuant to the provisions of an act of assembly, conveyed the lot to the complainant’s testa, tor, attempting thereby to pass the title of the State.
it is contended for the appellants, that there is no evidence of a sale or transfer from Gullion to the State.
The first constitution of the State, provided that the legislature, at their first session, should elect five corn-who should locate the capítol; and they were also empowered, u to receive grants from individuals therefor, and to make such conditions with the proprietor- or proprietors of the land, so pitched on by them, as to them should seem right, and should be agreed to by the said proprietor or proprietors, and lay off a town thereon, in such manner as they should judge most proper.”
In August, 1792, before this place was chosen, Gul-lion, with four other proprietors of out-lots, in order to induce the commissioners to fix <Sn Frankfort, signed and scaled the following writing;
The writing-seal<J.(1 bJ which the state author-hie sale,
Evidenoe a subscrib-mg witness, íhaí remember attesting-the PaPeI>3t, ** hand writing-, that the name of the {Jotui'his the party’s, hand writing, hadVeon^the invariable practice of J^ertoat-’ test a paper unless he saw s!ti onboard himacknowi-edgo it, and tlla*be ^ oase in question is not an ®*^®l?k°n^ is admit the paper on a trial at la'v’y chancery”
question*hav-iugbecu sold by !lil'ectoi£,ispie-sumptire ovi; donee that it feilto the tho^writing1" sealed by Gullioii.
*199 Whereas, we, the under-writers, do claim sundry out-lots,'adjoining the town of Frankfort, which is now proposed to the commissioners for fixing the seat of government; we, the under-writers, do therefore agree, to lay ofFour several out-lots into small lots and streets, agreeable, to the original plan of said town, arid to vest one half thereof in the átate of Kentucky, forever, and a division to be made by giving the State the first choice of a lot, ourselves the second, and so on nulcly.”
(1) It is insisted, that as the whole title is contested by the answers of the defendants, the proof is cient to establish the genuineness of this paper. We think differently. One of the subscribing witnesses, has deposed to his own signature; that he does not think tire signature of Gullion is in his hand writing, nor does he remember to have attested the paper: but that it has always been his invariable rule, never to attest a writing, unless he saw the parties sign or heard them acknowledge it, and he is confident he should not have done so in this instance, if Gullion had not acknowledg-cd it. This testimony would be sufficient to admit the paper to be used in a trial at law, and, of course, it ought to be taken by the chancellor as sufficiently established,
Tais writing connects Gullion with the State, which has conveyed, by her directors, to the complainant’s tes-tutor, and if it was ever carried into effect' and applied to the lot in question, it will prevent the appellants from all the defence they might have, for the want of writing between Gullion and the State.
It is evident, from the appellants’-deed, which they hnve received from Gullion, that this lot now in contest, is a part of a larger lot held by Gullion, which was probably divided into smaller lots, pursuant to the said agree-menf, and the proofis explicit, that the larger lot was so divided; that some of its fractions were sold by the State, and some left to Gullion; and that this very lot was so «old by the State, and that the present claim is derived from that sale, it is insisted that the larger lot is not identified. We answer,-that the appellants’ deed is sufficient for that purpose. It is also insisted, that it does not appear that the half was left for Gullion. To this we answer, that the contrary does not appear, and if the State got as much or more than it ought to have -had, exclusive of this lot, it lay upon the appellants to *200 shotf that fact; and as the proof is satisfactory that the Staté sold this, we cannot presame it to be done improp1 eriy; Wc, therefore, deem the proof complete that the complainant holds the equity in the lot, set u p in the bill,
. creeinent of. the pfoprie: #iankfort to conveyThe * state one of their lots, theCcommis-siotiers were Boleoting the soatof ^gov-ermnent, was on sufficient to'be^enforo-ed inequity,
(3) That the agreement by toraofFrank-fort, to con-vcy the state p^oftheu duce the commission-Tr the'seat óf government0 was madeun-dev authority ycniion°añd aftenvards sanctioned S~ eludes an in-quivy into the b'ein»10'»°ínst publicnolioy.
(2) it is objected against the relief sought, that there .it no£ a sufficient consideration proved in this contract, to authorize the .chancellor to enforce the contract be* tween the State and Gullion. To this we reply, that the offer was, no doubt, made by Gullion to induce (he commissioners' to fix on this town, on the full belief that it would render the half which he retained, of more value than the whole was before, if the scat of govern-ment should he placed here, and that such was the ef-feet, there is no reasonable room to doubt; and as the has rendered that benefit, we cannot Say that there js no consideration.
(3) l-1, has also been contended, that the contract be-tween the State and Gullion, was one against sound pol-|Cy5 because it was calculated; by pecuniary inducc-meats, to cause the agents of the Slate to swerve from their duty, and to prefer an improper place to one more proper, by a larger reward, and that if the State shall se*" UP own seat °f government, or its county seats, to be bid for and purchased, as this was, the chancellor ought not to lend his aid to enforce such contracts. That the chancellor will-not enforce a contract against sound policy, there is no doubt, and wc cannot say that the Practice objected to, is founded on wise policy, and that it may not lead to corruption and abuse; and if this was the case of a contract between two individuals, we might hesitate before we would lend our aid; but here -a high contracting part}7 is concerned, capable first of settling what policy is sound or unsound, and then of con^rac^no according to the rule. The people, in non-vention assembled, decided the policy was sound, and then provided for contracts under it. The Legislature, at the succeeding session, accepted this contract, in ac-cordance with the then existing constitution, and pro-vided for carrying it into effect, by appointing'dircc-tors of the new capitoi,and authorizing them to sell the land granted, which was done, and this is one of the sales. This decision on both the consideration of this contract, as well as on its policy, is of so high a nature as to conclude all the functionaries <rf the government, from questioning it as a question of me.um, and iuvm. *201 To tbe people in convention was confided the principles of policy, and their decision on this very case, must pre-elude further inquiry.
(4) Visible occupancy,W facie evi-™1 donee of notice to a sA-cirxser^mdif notconclu-sire, the par-Y avoid it positively,1 and assume *he onus pro* that his purchase was made so as to fromknowí1** ingit.
JoUmow^the bounds of his purchase, i!nd>there" a^pjizedthat it embraced ttle ground
Talbot and Bibb, for plaintiffs; Crittenden, Haggin and Huston, for defendant.
(4) It is finally insisted, that the appellants hold the legal estate, and are innocent purchasers fora valuable consideration, without notice, and, therefore, their ti-tie cannot be affected. It is true, there is an attempt in the answers, to deny notice; but it is a faint one. Before the purchase of the appellants, the complainant’s testator had agreed to sell the lot to an individual, who had entered thereon, and was erecting or had erected a factory and other valuable improvements, and the ap-pcilanis lived in the same town. They admit they feriow of these buildings at the time of their purchase, and attempt to avoid the effect of the notice conveyed hy these improvements, by saying, that they did not know that the lot included these improvements, as they were unacquainted with its boundary, and afterwards discovered that these improvements were embraced.
If they bought not knowing what spot, it proves that they were very careless, and intended to run the risk of its including the improvements of others, and that they did not act with as much reasonable caution as they were bound todo. Visible occupancy has always been held sufficient to convey notice, and it is reasonable that it should. We need not here determine, that it is conclusive evidence of notice; for, at least, it must be strong prima facie evidence, aud if its effect can ever be 'avoided, it must be by the purchaser denying it posi-lively, and assuming the onus probandi, and showing that the purchase was made under circumstances which precluded notice therefrom.
Upon the whole case, therefore, we are of opinion that the court below did not err in decreeing a perpetual injunction and a conveyance of the title, and* that the decree must be affirmed with costs.-
The counsel for the appellants moved the court for a .re-hearing of the cause, on the question of the sufficiency of the prebf of the writing exhibited as the act of Cull ion, and the identity of the lot in contest, with those embraced in that instrument, and showed the grounds of (heir motion in the following